UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF ADVANCED PAIN CENTERS POPLAR BLUFF, et al. | ) ) ) ) | |
| ABDUL NAUSHAD, M.D., P.C. a/k/a ADVANCED PAIN CENTERS, a Missouri Professional Corporation, and BILLY JO ANN WILMERT, | ) ) ) ) ) | Case No. 1:13CV00107 AGF |
| Petitioners, | ) ) ) | and |
| vs. | ) ) | |
| TIMOTHY WARE AND OTHER UNKNOWN FEDERAL AGENTS, et al. | ) ) ) | Case No. 4:13CV01408 AGF |
| Respondents. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court for final ruling on the Motion to Quash Search Warrants, Subpoenas, and/or to Return Property Seized during the Course of the Execution of an Illegal Search under Rule 41 of the Federal Rules of Criminal Procedure of Abdul Naushad, M.D., P.C. a/k/a Advanced Pain Centers ("APC"), and Billy Jo Ann Wilmert ("Petitioners"), and on Petitioners' Supplement to Motion, pertaining to e-mails obtained thereafter, filed on March 26, 2014.

I. **Motion to Quash Search Warrants**

In their initial motions, Petitioners assert that they are entitled to the return of certain documents under the provisions of Federal Rule of Criminal Procedure 41 because Respondents Timothy Ware and other unknown federal agents ("the

Government") violated Petitioners' rights under the Fourth Amendment by seizing certain documents while executing search warrants at several of Petitioner Naushad's APC clinics.[1]  Specifically, Petitioners assert that the search warrants fail to describe the items to be seized with the required specificity and that certain of the seized documents are beyond the scope of the warrants, or have no relationship to the violations identified in the search warrants.  Petitioners seek the return of, or to exclude as evidence, certain of the seized documents.  For the reasons set forth below, Petitioners' motion will be denied.

## BACKGROUND

Petitioner Naushad ("Dr. Naushad") owns and operates several APCs in the Saint Louis vicinity and in Southeastern Missouri.  On June 26, 2013, a team of federal agents, and other state local law enforcement officers executed search warrants at six of the APCs, in connection with their investigation of Dr. Naushad and others for suspected distribution of controlled substances outside the normal scope of medical practice by unqualified and unauthorized persons, as well as the submission of fraudulent Medicaid and Medicare claims and the "up-coding" of office visits in violation of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 1347, and 18 U.S.C. § 1035.  It is undisputed that the Government

---

[1] In this motion Petitioners also challenged the retention of all seized documents under Rule 41, and requested reimbursement of copying costs, and challenged the seizure of incident reports on the ground that they were subject to the attorney client and work product privileges.  The Court addressed the copying costs and privilege issues separately in an earlier Memorandum and Order.  *See* Case No. 1:13CV107AGF, Doc. No. 38; Case No. 4:13CV1408AGF, Doc. No. 16.

acted pursuant to the search warrants but also seized items not explicitly identified in the warrants, including the incident reports that are the focus of Petitioners' motion.

An attachment to the affidavits in support of the warrants describes the documents to be seized as follows:

> 1. Original and copies of APC patient records, to include but not limited to, records pertaining to patient histories, assessments, treatment notes, physician orders, nurses notes, prescriptions, notes/correspondence showing communication with patients, patients' families and representatives, and insurers and third party payers. The patient records to be seized include, but are not limited to, the records of patients listed on Attachment C.
>
> 2. Original and copies of billing records of patients, to include but not limited to, claim forms, superbills, encounter forms, explanations of benefits (EOB) forms, transmittal forms, and documents reflecting communications with the patients, families and representatives, and insurers and third party payers concerning payment for services provided by APC and/or employees and agents of APC and Dr. Naushad.
>
> 3. Personnel records for present and former employees . . . of APC . . . including . . . documents reflecting communication with APC and/or employees and agents of APC and Dr. Naushad.

Doc. No. 15-1, at 2.

Among the items seized were certain binders containing "incident reports," documents routinely prepared by APC employees to record adverse events involving patients or employees occurring at the clinics. *See* Case No. 4:13CV1408AGF, Doc. No. 20-1. The generic incident report form used by the APCs includes the type of information ordinarily maintained by a medical provider in patient records: the patient or employee name, the physician, the name of the APC employee completing the form, the

3

patient's account number and diagnosis, a narrative description of the incident, the outcome of the incident; and any harm to the patient or employee. *Id.* at Doc. No. 20-3.

In support of their motion, Petitioners submitted a log (the "Log") describing the contents of each of the incident reports. *See id.* The Court's review of the Log indicates that the incident reports document both employee-related and patient-related incidents. The patient-related incidents include the following types of events: falls, anxiety, seizures, chest pain, diabetic reaction, muscle spasms, difficulty breathing, needle sticks, billing complaints, threatening comments or assaults directed at physicians, the giving of an injection on the wrong side of the body, the performance of the wrong procedure on a patient, law enforcement reports that APC patients were using drugs, and the death of a patient following treatment.

Petitioners assert that the descriptions of patient and billing records set forth in the warrants are overbroad and lack the specificity required under the Fourth Amendment. Petitioners further argue that the incident reports seized do not fit the definition of "patient records" or "billing records" as described in the warrants and are therefore beyond the scope of the warrants. Finally, Petitioners assert that the patient information contained in the incident reports is not relevant to the alleged violations of the federal criminal statutes that are the subject of the search warrants and the Government's investigation. For these reasons, Petitioners seek an order requiring the Government to return the seized incident reports and prohibiting the Government from retaining copies of those reports.

4

In response, the Government has advised the Court that it will voluntarily return the incident reports[2] identified by Bates numbers: 62-92, 209-222, 668-676, and 1351-1360, which relate solely to injuries to employees or employee discipline for non-patient related acts. Without conceding that these documents are beyond the scope of the warrants, the Government states that they will be returned to Petitioners because they do not advance its investigation.

With respect to the remaining documents at issue, the Government takes the position that the warrants describe the items to be seized with the required particularity and that the patient-related incident reports are within the scope of the warrants and relevant to the underlying investigation.

## APPLICABLE LAW

**Federal Rule of Criminal Procedure 41**

Rule 41(g)[3] allows persons whose property has been seized by the government to petition a district court for the return of the confiscated property. Rule 41(g) provides as follows:

> (g) <u>Motion to Return Property</u>. A person aggrieved by the unlawful search or seizure of property or by the deprivation of property may move for the property's return. . . . The court must receive evidence on any

---

[2] The Government acknowledges some delay in the return of these incident reports and attributes the delay to the fact that the Government counsel assigned to the prosecution team did not obtain access to the incident reports until the Government requested and the Court permitted such access during an April 9, 2014 telephone conference with the parties.

[3] Prior to amendments enacted in 2002, the substance of Rule 41(g) was contained in former Rule 41(e). *See United States v. Copeman*, 458 F.3d 1070, 1071 n. 1 (10th Cir. 2006) (noting that "[w]hat was formerly Rule 41(e) is now Rule 41(g), with only stylistic changes").

> factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

*See* Fed. R. Crim. P. 41(g).

Prior to its amendment in 1989, Rule 41(g) permitted the return of property or documents only based on an illegal search and seizure. Further, the Rule then provided that if return were granted, the property would be restored and would "not be admissible in evidence at any hearing or trial." In 1989, the provision requiring suppression was deleted. *See Bennett v. United States*, No. 12—61499—Civ, 2013 WL 3821625, at *9-10 (S.D. Fla. July 23, 2013). The Advisory Committee explained:

> The amendment deletes language dating from 1944 stating that evidence shall not be admissible at a hearing or trial if the court grants the motion to return property under [41(g)]. This language has not kept pace with the development of the exclusionary rule doctrine and is currently only confusing. . . . [Rule 41(g)] is not intended to deny the United States the use of evidence permitted by the fourth amendment and federal statutes, even if that evidence might have been unlawfully seized. . . . Thus the exclusionary provision is deleted, and the scope of the exclusionary rule is reserved for judicial decisions.

Fed. R. Crim. P. 41(g), Advisory Committee Notes to the 1989 amendments.

Rule 41(g) compels a district court to afford such persons an opportunity to submit evidence in order to demonstrate that they are lawfully entitled to the challenged property. *United States v. Bailey*, 700 F.3d 1149, 1151 (8th Cir. 2012). Because an order providing for the return of property under Rule 41(g) is an equitable remedy, it "is available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction." *De Almeida v. United States*, 459 F.3d 377, 382 (2d Cir. 2006); *see also United States v. Zaleski*, Doc Nos. 11-660-cr(L), 11-1888-cr(CON), 2012 WL

2866301, at *92 (2d Cir. July 13, 2012); *United States v. Shigemura*, 664 F.3d 310, 311 (10th Cir. 2011); *In re Search of 4801 Fyler Ave.*, 879 F.2d 385, 387 (8th Cir. 1988) (recognizing that pre-indictment, a motion to return and suppress is "'more properly considered as a suit in equity rather than one under the Rules of Criminal Procedure.'") (quoting *Richey v. Smith*, 515 F.2d 1239, 1245 (5th Cir. 1975)).

> No standard is set forth in [Rule 41(g)] to govern the determination of whether property should be returned to a person aggrieved either by an unlawful seizure or by deprivation of the property. The fourth amendment protects people from unreasonable seizures as well as unreasonable searches, *United States v. Place*, 462 U.S. 696, 701 (1983), and reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property. **If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable**. But, if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable."

Fed. R. Crim. P. 41 Advisory Committee's Note to 1989 Amendments (emphasis supplied). Therefore, during the investigatory phase of a criminal matter, the lawfulness of the underlying search and seizure for purposes of the Fourth Amendment is pertinent to, but not determinative of a Rule 41(g) claimant's right to return of the property. *Cf. United States v. Smith*, 329 Fed. App'x. 682, 683 (8th Cir. 2009) (holding that the lawfulness of the underlying search and seizure was not determinative of a defendant's right to return of the disputed property); *United States v. Embrey*, 50 Fed. App'x. 804, 805 (8th Cir. 2002) (unpublished per curiam) (same). However, once criminal proceedings have terminated, "the person from whom the property was seized is presumed to have a right to its return, and the government must demonstrate that it has a

7

legitimate reason to retain the property." *Shigemura*, 664 F.3d at 311 (internal quotation omitted).

Rule 41(h) provides an additional remedy stating that "[a] defendant may move to suppress evidence in the court where the trial will occur" in accordance with the provisions of Rule 12. Fed. R. Crim. P. 41(h).

**<u>Fourth Amendment Principles</u>**

The Fourth Amendment requires that a warrant "particularly describ[e] the . . . things to be seized." U.S. Const. amend. IV. This requirement precludes the issuance of a warrant that permits a "'general, exploratory rummaging in a person's belongings.'" *United States v. Kail*, 804 F.2d 441, 444-45 (8th Cir. 1986) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). However, the particularity requirement has long been construed "to provide a practical margin of flexibility" regarding "the degree of specificity required in search warrant descriptions." *United States v. Porter*, 831 F.2d 760, 764 (8th Cir. 1987).

Specifically, under Eighth Circuit law, "the standard used to determine the adequacy of the warrant description is one of 'practical accuracy,'" such that "the degree of specificity may necessarily vary according to the circumstances and type of items involved." *Id.* (quoting *United States v. Johnson*, 541 F.2d 1311, 1313 & 1314 (8th Cir. 1976)). "To satisfy the particularity requirement of the fourth amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007). "Where the precise identity of goods cannot be ascertained at the time the warrant

is issued, naming only the generic class of items will suffice . . . ." *United States v. Dennis*, 625 F.2d 782, 792 (8th Cir. 1980) (recognizing that "[t]he particularity requirement 'is a standard of practical accuracy rather than a hypertechnical one'") (internal quotation omitted); *see also United States v. Thurman*, 625 F.3d 1053, 1057 (8th Cir. 2010) (quoting *United States v. Peters*, 92 F.3d 768, 769-70 (8th Cir. 1996)), *cert. denied*, 563 U.S. ___, 131 S. Ct. 1803 (2011). In addition, the Court notes that "whether a warrant fails the particularity requirement cannot be decided in a vacuum. The court will base its determination on such factors as the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011) (quoting *Milliman v. Minnesota*, 774 F.2d 247, 250 (8th Cir. 1985) (internal citation omitted)); *see also Andresen v. Maryland*, 427 U.S. 463, 480 n. 10 (1976).

Finally, the Fourth Amendment requirement that the documents seized fall within the scope of the warrant and relate to the subject matter of the investigation are interpreted with similar practicality. *See, e.g., United States v. Hager*, 710 F.3d 830, 835 (8th Cir. 2013) (discussing whether agents acted within the scope of a warrant and holding that "[t]he broad language of the warrant must be given a practical, rather than a hypertechnical, interpretation that is cabined by the purpose for which it issued").

## DISCUSSION

### Rule 41

To the extent Petitioners' request falls within the scope of Rule 41(g), the Court finds Petitioners are not entitled to relief. Under Rule 41(g) the Government's retention

9

of the seized documents pending the conclusion of its investigation or a related criminal action is presumed reasonable. Petitioners have offered neither evidence nor argument sufficient to persuade the Court that seizure of the disputed incident reports was unreasonable.

Petitioners also essentially seek suppression, as they seek to require the Government to return all copies of the documents and to prevent their use by the Government for any purpose. It is not entirely clear, however, the extent to which Rule 41(g) provides a basis for suppression pre-indictment. "The Circuit Courts that have addressed the issue are divided, with more Courts finding that the 1989 amendments did not foreclose the possibility that complete suppression can be ordered under the rule." *Bennett*, 2013 WL 3821625, at *11 (citing cases). Assuming *In re Search of 4801 Fyler Ave.* remains good law, and that the Eighth Circuit sides with the majority of Circuits, the question continues to be governed by equitable considerations and the factors cited in *Pieper v. United States*, 604 F.2d 1131, 1133 (8th Cir. 1979) and *Richey v. Smith*, 515 F.2d 1239 (5th Cir. 1975). *See In re Search of 4801 Fyler Ave.*, 879 F.2d at 387-88; *Bennett*, 2013 WL 3821625, at *11-12. Having carefully considered Petitioners' arguments, as well as the applicable equitable principles, Petitioners' request to prevent any use of the documents fails.

As discussed below, Petitioners have not demonstrated that the agents acted in callous disregard of Petitioners' Fourth Amendment rights. Further, Petitioners have not been irreparably harmed. The Government has agreed to return some of the disputed incident reports immediately, Petitioners have been provided copies of all retained

10

documents, and Petitioners may seek the return of the remainder of the documents at the conclusion of the investigation or criminal proceeding. The mere fact that Petitioners may face criminal indictment is not sufficient to constitute irreparable harm. *In Re Search of 4801 Fyler*, 879 F.2d at 389.

To the extent that Petitioners seek suppression of the seized incident reports solely on the ground that the search and seizure failed to comport with the requirements of the Fourth Amendment, the Court concludes that they are without standing to mount such a challenge. Unlike Rule 41(g), which applies to "person[s] aggrieved," Rule 41(h) applies only to "defendant[s]." Petitioners who are under investigation but have not been indicted or charged with any criminal wrongdoing related to the investigation, do not therefore satisfy the requirements of the Rule for purposes of suppression.

For the reasons stated above, the Court concludes that the motion to quash lacks merit. The Court believes that Petitioners' further arguments, regarding the scope of the warrant and lack of particularity, are arguments Petitioners may assert under Fed. R. Crim. P. 12, in any criminal proceeding. However, even if these arguments provided a basis for relief pre-indictment, for the reasons discussed below, the Court finds Petitioners' contentions lack merit.

**The Fourth Amendment Concerns**

   A. Particularity

Upon review of the descriptions of the documents to be seized, the Court concludes that they are sufficiently specific to meet the particularity requirement of the Fourth Amendment. The broad categories of patient, billing, and personnel records

"must be read in the context of the specific list that follows" and the purpose of the investigation. *Fiorito*, 640 F.3d at 347. Considering similarly broad descriptions in light of these factors, numerous Eighth Circuit decisions uphold seizures predicated on warrants describing only general categories of items to be seized. *See, e.g.*, *United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999) (holding that "the words '[r]ecords, documents, receipts . . .' were sufficiently particular to preclude the exercise of any illegal discretion by the executing officers."); *Marvin v. United States*, 732 F.2d 669, 673 (8th Cir. 1984) (holding that the phrase "[p]atient cards, also known as ledgers, and patient medical folders . . . and other books and records that reflect the income and expenses . . . from the operation of the Midtown Clinic" met the particularity requirement); *Dennis*, 625 F.2d at 792 (holding that search warrant for "certain books and records" relating to crimes was not overbroad and met the specificity requirement because exact identity of evidence to be seized was not known at time of issuance); *Johnson*, 541 F.2d at 1331 (holding that the phrase, including "[a]ny and all address and/or telephone books and records, reflecting names, addresses, and/or telephone numbers, including but not limited to, paper and computer formats" met the specificity requirement for the seizure of evidence related to drug trafficking).

Moreover, in a case such as this, involving allegations that an entire business is operating in a fraudulent manner, a requirement that a warrant explicitly identify all of the records or even the types of records to be seized would be unreasonable and contrary to the "practical accuracy" standard espoused by the Eighth Circuit. *Porter*, 831 F.2d at 764.

B. Scope of the Warrant

Petitioners also argue that the seizure of the incident reports exceeds the scope of the warrant because the incident reports are not explicitly referenced in the list of items to be seized and do not relate to the provision of patient care. The Court concludes, however, that the incident reports were properly seized as "patient records," "billing records," or "personnel records" because "'[t]he failure of the warrant to anticipate the precise form in which [the information] would appear is not fatal.'" *United States v. Sherman*, 372 Fed. App'x 668, at *6 (8th Cir. Apr. 14, 2010) (quoting *United States v. Lowe*, 50 F.3d 604, 607 (8th Cir.1995)).

The patient-related incident reports relate to APC patients and were maintained at each clinic to document information related to the patient's care. Further, these documents are reasonably included with the category of "patient records, to include but not limited to . . . notes/correspondence showing communications with patients." Neither the designation of these particular patient records as "incident reports" nor the fact that they were maintained in a binder separate and apart from other patient records takes them out of the general category of patient records or places them beyond the scope of the warrant. *See id.*; s*ee also United States v. Kail*, 804 F.2d at 445 (8th Cir. 1986) (concluding, where there was probable cause to believe that "fraud permeated the entire business operation," that seizure of almost all of the target's business records did not exceed the scope of the warrant because "it would not be possible through a more particular description to separate those business records that would be evidence of fraud from those that would not"). In light of these precedents, the Court concludes that the

13

incident reports referring to events involving APC patients are "patient and billing records" within the scope of the warrant.

      C. <u>Relevance</u>

The Court does not agree with Petitioners' contention that the seizure of the incident reports was improper because they are not relevant to the offenses referenced in the warrants. The incident reports bear a reasonable relationship to an investigation of those offenses because a reasonable agent could determine that they might shed light on prescribing and billing practices and the administration of prescription drugs by unauthorized personnel at the clinics. *See Sherman*, 372 Fed. App'x. 668, at *6.

## CONCLUSION

In the event that Petitioners are charged with a criminal offense, they may challenge the evidentiary relevance of specific incident reports or otherwise seek suppression under the Federal Rules of Criminal Procedure. At this juncture, however, they have not shown their entitlement to relief under Rule 41 or equitable principles, or under the Fourth Amendment.

**II.**     **<u>Petitioners' Supplement to Motion</u>**

After the hearings and all briefs were completed on Petitioners' Rule 41 motions related to the search warrants executed on June 26, 2013, Petitioners filed a Supplement to their motion, related to an e-mail dated August 14, 2013, from Mary Dolan to Brittany Wideman, that had been obtained by the investigating agents. Petitioners learned the investigators had obtained the email after an investigating agent contacted Dolan, who was then no longer employed by Petitioners, and asked to discuss it with her. Petitioners

attached affidavits from Dolan and Wideman attesting that they had not provided it to the investigators.  Noting that the email could not have been covered by the original warrants, as it was created after the warrants were executed, Petitioners speculate that the Government must have "obtained the email illegally through either hacking into petitioner's computer system or otherwise illegally accessing petitioner's employees' email accounts."  Case No. 1:13cv00107 AGF, Doc. No. 26, at 2.  They seek the return of all copies of petitioners' employee's emails currently in the possession of the Government.  *Id.* at 3.

In their response to Petitioners' supplemental motion, Respondents state that on September 16, 2013, Magistrate Judge Frederick R. Buckles approved a warrant for the e-mail account of Wideman stored and controlled by Google, and obtained the e-email through proper execution of that warrant.  Petitioners' did not file any reply or offer anything to dispute Respondents' assertion.

As such, the Court finds no basis to require a return of the e-mails obtained as a result of the September 16, 2013 search warrant or for any further proceedings related to the supplemental motion.   Petitioners offer nothing beyond rank speculation, that appears to be unfounded, for contending that the e-mail was obtained unlawfully.  And the magistrate judge's determination of probable cause is entitled to deference.

Further, for reasons similar to those discussed above, Petitioners' have not met their burden to demonstrate that they are entitled to a return of any e-mails obtained under Rule 41 or any applicable equitable principles.  Petitioners do not allege that their own access to this data was in any manner infringed, and they will have a full and fair

15

opportunity to contest the Government's use of any documents obtained as a result of the September 16, 2013 search warrant in any future criminal proceeding, through a motion to suppress. *See In re Search of 4801 Fyler Ave.*, 879 F.2d at 389. It simply cannot be that Rule 41(g) was intended to be used in a manner such as this, to try and force investigators to disclose and justify each step of their investigation as it is taken.

Accordingly, Petitioners' Supplement to the Rule 41 Motion, related to e-mails, shall be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioners' Motion to Quash Search Warrants, Subpoenas, and/or to Return Property Seized during the Course of the Execution of an Illegal Search is **DENIED**. (Doc. No. 1)

**IT IS FURTHER ORDERED** that Petitioners' Supplement to Rule 41 Motion is **DENIED**. (Case No. 1:13CV107AGF, Doc. No. 26; Case No. 4:13CV1408AGF, Doc. No. 10.)

All issues having been resolved, the cases are hereby closed.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of June, 2014.